UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| STEPHEN HAMER, | ) | |
| an individual, | ) | Case No: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| CITY OF TRINIDAD, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## **COMPLAINT**

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

Plaintiff, STEPHEN HAMER, an individual, by and through his undersigned counsel, hereby files this Complaint and sues the CITY OF TRINIDAD, as the entity responsible for the sidewalks and curb cuts in the City of Trinidad, for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Americans with Disabilities Act" or "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"), and states as follows:

## **BACKGROUND**

1.      Named Plaintiff STEPHEN HAMER brings this action on behalf of himself who is being discriminated against and subjected to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of way.

2.      Upon information and belief, many of the sidewalks and curbs in the City of Trinidad are owned by DEFENDANT.

3. Upon information and belief, to the extent DEFENDANT does not own portions of the sidewalks and curbs, DEFENDANT nonetheless operates those sidewalks and curbs as it has the right to repair or rebuild those sidewalks or curbs under the local municipal code.

4. Upon information and belief, to the extent DEFENDANT does not own portions of the sidewalks and curbs, DEFENDANT nonetheless operates those sidewalks and curbs by requiring their usage by the public.

5. On February 12, 2015, STEPHEN HAMER appeared in a local news story by KOAA News 5, concerning ADA violations in the CITY OF TRINIDAD, highlighting the accessibility problems with the City's sidewalks and curb ramps.

6. On September 30, 2016, STEPHEN HAMER again appeared in a local news story by KOAA News 5, which highlighted how no changes have been made to address the problems outlined by the February 12, 2015 news story.

## JURISDICTION AND PARTIES

7. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.*, (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising from 29 U.S.C. §794 *et seq.* (Rehabilitation Act).

8. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

9. This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202, and Rule 56 of the Federal Rules of Civil Procedure.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the DEFENDANT's Property, which is the subject of this action, is located in Las Animas County, Colorado.

11.   Plaintiff, STEPHEN HAMER, (hereinafter referred to as "MR. HAMER") is a resident of Trinidad, Colorado.

12.   MR. HAMER is a qualified individual with a disability under the ADA. MR. HAMER has severe bilateral ankle problems.

13.   Due to his disability, MR. HAMER is substantially impaired in several major life activities. Specifically, MR. HAMER uses an electric wheelchair or scooter for mobility due to his disability. MR. HAMER cannot ambulate without the assistance of a wheelchair or scooter.

14.   Upon information and belief, DEFENDANT is the political entity responsible for owning, administering, operating, and maintaining the sidewalks and curbs within the City of Trinidad ("the Property"). As discussed above, however, to the extent DEFENDANT does not own some of the sidewalks or curbs in the City of Trinidad, it is nonetheless responsible for their construction, repair, replacement, and/or maintenance.

15.   DEFENDANT is responsible for complying with the obligations of the ADA.

16.   All events giving rise to this lawsuit occurred in Las Animas County, District of Colorado.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

17.   MR. HAMER realleges and reavers paragraphs 1-16 as if they were expressly restated herein.

18.   Upon information and belief, DEFENDANT is a public entity, subject to the ADA, and is responsible for the properties which form the basis of this suit: sidewalks and curbs forming the pedestrian right of way which are located in Trinidad, Colorado

19.   The City's pedestrian right of way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors.

20.   Accessible curb ramps are necessary to permit people who use wheelchairs and scooters to access the City's pedestrian right of way.

21.   Because the City's pedestrian right of way constitutes a core mode of transportation, the absence of accessible curb ramps prevent people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including but not limited to employment, housing, education, transportation, public accommodations, and recreation.

22.   When DEFENDANT constructs, repairs, replaces, or maintains sidewalks and curbs, it promotes the general public's convenience by overcoming a collective action problem and allowing citizens to focus on other ventures. Moreover, when DEFENDANT builds or alters a sidewalk, it helps meet a general demand for the safe movement of people and goods.

23.   The regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG) 28 C.F.R. § 35.151. A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation.

24.   In common understanding, DEFENDANT provides a service to its citizens when it builds

or alters a public sidewalk. Additionally, by requiring its citizens to use the sidewalks and curbs under penalty of fine, DEFENDANT makes this governmental service compulsory.

25.    As stated in the case of *Frame v. City of Arlington* "If a city official authorizes a public sidewalk to be built in a way that is not readily accessible to disabled individuals without adequate justification, the official denies disabled individuals the benefits of that sidewalk no less than if the official poured the concrete himself."[1]

26.    Upon information and belief, DEFENDANT develops and provides the services and programs offered at the Property.

27.    MR. HAMER has used, or attempted to use, numerous areas of the pedestrian right of way the City of Trinidad in the past. MR. HAMER lives in the Corazon Square Apartments, located at 201 Raton St., Trinidad, Colorado 81082.

28.    MR. HAMER has tried to use the architectural features offered at numerous sidewalks and curb ramps, but has experienced great difficulty as a result of noncompliant features, including but not limited to intersections without curb ramps or an inadequate number of curb ramps, curb ramps that are improperly installed and/or maintained, lack of a flush transition to the street, ramps with excessively steep running, cross, and side slopes, ramps that are too narrow and/or are otherwise noncompliant, and curb ramps that are not maintained resulting in ramps that are broken, cracked, crumbled, sunken, and/or caved.

29.    MR. HAMER intends on attempting to utilize the pedestrian right of way offered by DEFENDANT in the near future, but fears that he will continue to encounter great difficulty as a result of numerous architectural barriers which form the basis of this suit.

30.    While at the Property MR. HAMER has tried to access numerous architectural features

---

[1] 657 F. 3d 215, 226 (5th Cir. 2001)

but has encountered numerous barriers which hindered his ability to access the services and utilize the programs offered at the Property.

31.     MR. HAMER tried to use the architectural features offered Property, but experienced great difficulty as a result of the noncompliant features.

32.     As a result of DEFENDANT's discrimination, MR. HAMER has been unable to fully utilize the pedestrian right of way which is offered by DEFENDANT. Instead, MR. HAMER is often forced to ride his wheelchair in the public street due to the dilapidated and dangerous state of the sidewalks and curbs in the City of Trinidad.

33.     Many of the barriers discussed below put MR. HAMER in danger of physical injury and personal harm. For example, broken sidewalks and ramps, excessively steep cross slope, or debris make it possible for MR. HAMER to flip out of his wheelchair.

34.     Further, MR. HAMER is at risk of physical injury and personal harm as a result of his having to ride his wheelchair in street. When riding his wheelchair in the street, MR. HAMER is low to the ground and could be struck by passing vehicles.

35.     The barriers discussed below are excluding MR. HAMER from the programs and activities offered at the Property.

36.     Upon information and belief, DEFENDANT has discriminated, and is continuing to discriminate, against MR. HAMER in violation of the ADA by excluding and/or denying MR. HAMER the benefits of its services, programs, and/or activities by failing to, *inter alia*, have accessible facilities.   MR. HAMER's visits to the Property shows that the program, when viewed in its entirety, is not accessible.

37.     Upon information and belief, as set forth herein, MR. HAMER alleges that since March

15, 2012, DEFENDANT has constructed, altered, or repaired parts of these facilities within the meaning of ADAAG and the UFAS, and that DEFENDANT, through its administrative methods, policies, and practices, has failed to make such facilities compliant with the ADAAG and UFAS, as updated in 2010 and as required under 28 C.F.R. 35.151(c)(5).

38.     Upon information and belief, as set forth herein, MR. HAMER alleges that DEFENDANT and its agents and employees have violated and continue to violate Title II of the ADA by failing to maintain the features of the City's walkways and curb ramps that are required to be accessible.

39.     Upon information and belief, as set forth herein, MR. HAMER alleges that DEFENDANT and its agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints regarding the lack of accessible curb ramps necessary to ensure access to the City's pedestrian right of way.

40.     DEFENDANT's ADA barriers and failure to comply with the ADA include but are not limited to the following particulars:

A.  The curb ramp outside of the Corazon Square apartments on Raton Street where MR. HAMER lives is cracked and broken.

B.  There is no curb cut on the eastern sidewalk of the intersection of Santa Fe Trail and West First Street.

C.  There are raised concrete pads along the pedestrian right of way along Santa Fe Trail that present a vertical change in level greater than 1 inch.

D.  The crosswalk at the intersection of West Main Street and Santa Fe Trail is raised

brick, rather than smooth pavement, making it difficult for MR. HAMER to traverse in an electric wheelchair or scooter.

E.  Although it is a relatively short distance from MR. HAMER's apartment to the Safeway grocery store on West Main Street, there are several intersections with no curb cuts along the way.  This requires MR. HAMER to travel along an extended route and to enter the vehicular way in order to buy groceries for himself.

F.  Several sidewalks throughout the City, including but not limited to the section of West Main Street between Animas Street and Convent Street, are paved with decorative brick that is difficult to traverse and impedes the required 36 inch access aisle.

G.  The accessible route on the sidewalk in front of Bella Luna Pizzeria is reduced to less than 24 inches, in lieu of the required 36 inches, because of designated space for outdoor seating.

H.  There are curb cuts throughout the city with an impermissibly excessive slope.

I.  There is no curb cut on the northeast corner of the intersection at East Main and Maple streets.

J.  The crosswalk at the southeast corner of the intersection of East Man and Maple streets does not lead to a curb cut.  The only accessible entrance to the sidewalk from this crosswalk is cracked and broken.

K.  There is no curb cut at the northeast corner of Main and Chestnut streets, resulting in no access to the Post Office.

L.  There is no curb cut at the southeast corner of Main and Chestnut streets.

M.  There is a non-compliant curb ramp at the southwest corner of Main and Chestnut streets, the only access to the sidewalk is cracked and broken.

N.  There is a drain cover along Main Street near the post office that protrudes upwards over 1 inch.

O.  The sidewalk on Chestnut Street between Main Street and East First Street approaching the Las Animas County Courthouse is noncompliant for the following reasons:

  a.  Areas of the sidewalk are cracked and broken,

  b.  There is vegetation protruding through the concrete which makes it difficult to traverse,

  c.  There are decorative bricks that make it difficult to traverse, and

  d.  Areas with missing bricks have been filled with unsmooth concrete.

P.  There are a lack of curb cuts at the intersection of Chestnut and East First streets near the Las Animas County Courthouse.

Q.  There is a drain along the accessible route to the Las Animas County Courthouse that presents a dangerous and hazardous obstacle to persons using mobility aids.

R.  There are no curb cuts at all at the intersection of Maple and First streets.

S.  There are non-compliant new constructions being done along the pedestrian right of way in the City of Trinidad, including but not limited to construction being done at the intersection of Plum Street and Commercial Street.  Violations at this location include a fire hydrant located in the middle of the sidewalk.  Instead of forming the sidewalk around the hydrant to allow persons using mobility aids such as MR.

HAMER to use the pedestrian right of way, he must take an extended route and enter the vehicular roadway.

42      U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

41.     DEFENDANT has discriminated against MR. HAMER by denying him full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 28 C.F.R. Part 35.101-35.190 *et. seq.*

42.     DEFENDANT has discriminated against MR. HAMER by denying him full access to the services, programs, and/or activities by failing to maintain its facilities in a readily accessible condition, as is required by 28 C.F.R. Part 35.133.

43.     DEFENDANT has discriminated, and is continuing to discriminate, against MR. HAMER in violation of the ADA by excluding and/or denying MR. HAMER the full and equal benefits of its services, programs, and/or activities by failing to, inter alia, have accessible facilities. MR. HAMER personally experienced the numerous barriers to access on the Property discussed herein.

44.     28 C.F.R. § 35.130(4) states that "[a] public entity may not, in determining the site or location of a facility, make selections–(I) [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination..." DEFENDANT has violated this provision by providing its services,

programs, and/or activities at an inaccessible facility.

45.     DEFENDANT discriminated against MR. HAMER by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at its Property because of MR. HAMER's disability, all in violation of 42 U.S.C. § 12132.

46.     Upon information and belief, DEFENDANT continues to discriminate against MR. HAMER, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered   goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

47.     Upon information and belief, MR. HAMER and all other individuals similarly situated have been denied access to, and have been denied the benefits of services, programs and/or activities of DEFENDANT's Property, and have otherwise been discriminated against and damaged by DEFENDANT because of DEFENDANT's discrimination, as set forth above. MR. HAMER and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.  Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy DEFENDANT's discriminatory violations and avoid piecemeal litigation, MR. HAMER requires a full inspection of DEFENDANT's

Property in order to catalogue and cure all the areas of non-compliance with the ADA.

48. As a direct and proximate result of the aforementioned acts, MR. HAMER has suffered and continues to suffer difficulty, hardship, anxiety, and danger, due to DEFENDANT's failure to remediate missing, defective, inaccessible curb ramps throughout the City's pedestrian right of way.  These failures have denied and continue to deny MR. HAMER the full, equal, and meaningful access to the pedestrian right of way that the ADA requires.

49. MR. HAMER has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

50. MR. HAMER is without adequate remedy at law and is suffering irreparable harm.

51. Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant MR. HAMER's injunctive relief including an order DEFENDANT to alter the Property to make those facilities, and/or programs, and/or activities, readily accessible and usable to MR. HAMER and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as DEFENDANT cures its violations of the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

52. MR. HAMER adopts and re-alleges the allegations contained in paragraphs 1-51 as if fully stated herein.

53. MR. HAMER brings this claim against DEFENDANT, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

54. The Rehabilitation Act provides that:

No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).

55.   Upon information and belief, as set forth herein, DEFENDANT has violated the Rehabilitation Act by intentionally excluding the MR. HAMER, solely by reason of his disabilities, from the participation in, and denying him the benefits of, and have otherwise subjected them to discrimination under, DEFENDANT's programs and activities.

56.   Upon information and belief, a non-exclusive list of DEFENDANT's violations of the Rehabilitation Act and  discriminatory conduct against MR. HAMER are evidenced by:

A.   denying MR. HAMER access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

B.   by otherwise limiting MR. HAMER in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive DEFENDANT's aids, benefits and services;

C.   making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the

objectives of, the services, programs and activities offered by DEFENDANT at the Property;

D.      failing to administer services, programs and activities in the most integrated setting appropriate to the needs of MR. HAMER;

E.      excluding MR. HAMER from participation in, and the benefits of, DEFENDANT's services programs and activities as a result of DEFENDANT's Property being inaccessible to or unusable by MR. HAMER; and

F.      failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

57.   Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which MR. HAMER is more likely than not going to encounter upon his future visits to the subject premises.  MR. HAMER brings this action:

A.      to redress injuries suffered as a result of DEFENDANT's discriminatory actions and inactions set forth herein;

B.      to reasonably avoid further and future injury to MR. HAMER as a result of DEFENDANT's ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.      to ensure DEFENDANT's Property is accessible as required by the relevant applications of Title II of the ADA;

D.      to be made whole and ensure future compliance; and

E.      to reasonably avoid future ADA and Rehabilitation Act litigation involving the

14

same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

58.   Only through a complete inspection of the Property and related facilities, undertaken by MR. HAMER and/or his representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

59.   Upon information and belief, DEFENDANT is the recipient of federal funds.

60.   Upon information and belief, as the recipient of federal funds, DEFENDANT is liable for damages to MR. HAMER as a result of its acts and omissions constituting intentional discrimination.

61.   As set forth above, MR. HAMER has been denied access to, and has been, and without the relief requested herein will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by DEFENDANT solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of her disability as a result of DEFENDANT's Rehabilitation Act violations set forth above.

62.   MR. HAMER has been obligated to retain undersigned counsel for the filing and prosecution of this action, and has agreed to pay his counsel reasonable attorneys' fees, including costs and litigation expenses, incurred in this action.  MR. HAMER is entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANT pursuant to 29 U.S.C. §794(b).

63.   Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant MR. HAMER's injunctive relief including an order to alter the subject premises, facilities, services,

activities, programs and accommodations to make them accessible to and usable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and, granting MR. HAMER compensatory damages for DEFENDANT's discriminatory actions.

### PRAYER FOR RELIEF

WHEREFORE, MR. HAMER prays that:

A.  This Court issue a Declaratory Judgment that determines that DEFENDANT is in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.  This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by DEFENDANT is in violation of the Rehabilitation Act;

C.  This Court grant preliminary and permanent injunctive relief against DEFENDANT including an order to make all readily achievable alterations to the Property; or to make such Property readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require DEFENDANT to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such stops that may be necessary to

ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;

D.      This Court enter an Order directing DEFENDANT to alter and modify the Property and its facilities, services, activities, programs and accommodations as appropriate to comply with the ADA, and the Rehabilitation Act, including but not limited to the following actions;

i.      Ensure that the City install, remediate, repair, and maintain curb ramps such that, when viewed in its entirety, the City's pedestrian right of way is readily accessible to and usable by individuals with mobility disabilities;

ii.     Ensure prompt remedial measures to cure past violations of the City's requirements to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. §§ 35.151(a), (b), (c), or (i), and Section 504, 45 C.F.R. §§ 84.22, and the curb ramp design standards in effect at the time of such new construction or alterations;

iii.    Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design, or other federal access design standards, whichever is most stringent in its disability access requirements;

iv.     Ensure that DEFENDANT adopts and implements administrative

           methods, policies, and practices, to maintain accessible curb ramps, and;

    v.      Remain under this Court's jurisdiction until DEFENDANT fully complies with the Orders of this Court;

E.      This Court awards monetary damages, pursuant to Title II and <u>29 U.S.C. § 794a(a)2</u> for the harmed caused by DEFENDANT's discriminatory practices;

F.      This Court award of reasonable attorneys' fees, costs and litigation expenses pursuant to <u>29 U.S.C. § 794a(a)2</u> and <u>42 U.S.C. § 12205</u> and <u>28 C.F.R. § 35.175</u>; and

G.      Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA, and the Rehabilitation Act.

Respectfully Submitted,

THE BIZER LAW FIRM
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

Colorado Legal Associates
Matthew J. Greife (CO # 43487)
mgreife@uga.edu
1550 Wewatta Street - 2nd Floor
Denver, CO 80202
T: 612-964-5071


By:/s/ Garret S. DeReus
    GARRET S. DEREUS


## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of the United States District Court for the District of Colorado, and I appear in this case as counsel for Stephen Hamer.

By:/s/ Garret S. DeReus
    GARRET S. DEREUS