# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02545-NYW

STEPHEN HAMER,

      Plaintiff,

v.

CITY OF TRINIDAD,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Plaintiff Stephen Hamer's ("Plaintiff" or "Mr. Hamer") Motion for Partial Summary Judgment (or "Plaintiff's Motion") [#42,[1] filed July 3, 2017] and Defendant City of Trinidad's ("Defendant" or "City") Motion for Summary Judgment (or "Defendant's Motion") [#43, filed July 5, 2017].  The undersigned considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated November 28, 2016 [#14].  Upon careful review of the Motions and associated briefing, the applicable case law, the entire case file, and the comments offered during the October 5, 2017 Motions Hearing, the court DENIES Plaintiff's Motion and GRANTS Defendant's Motion for the reasons stated herein.

---

[1] Plaintiff filed his Motion for Partial Summary Judgment under Level 1 restriction, given that several attached exhibits include Plaintiff's medical records.  The court granted Plaintiff's Motion to Restrict Access to his medical records, but directed Plaintiff to file a redacted version of his Motion for Partial Summary Judgment and restricted documents, which are located at docket entry [#47].  For clarity purposes, in citing to Plaintiff's Motion for Partial Summary Judgment, the court cites to the restricted document [#41], but does not cite to any restricted information.  This is also true of any other documents similarly filed under Level 1 restriction.

# PROCEDURAL BACKGROUND

On October 12, 2016, Plaintiff initiated this action by filing his Complaint, alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 *et seq.* [#1]. Mr. Hamer alleges that the City has "discriminated against and subjected [him] to unlawful or hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of way." [*Id.* at ¶ 1]; *see also* [*id.* at ¶ 18]. Defendant filed its Answer to Plaintiff's Complaint on November 10, 2016. [#11].

The case proceeded through discovery, and the Parties timely filed the instant cross-Motions for Summary Judgment. [#18; #19]. In his Motion, Plaintiff seeks summary judgment as to whether: (1) he has standing to pursue this action; (2) he is a "qualified individual" under both the ADA and the RA; (3) the City's sidewalks and curb cuts are a "program, service, or activity" under Title II of the ADA and section 504 of the RA; (4) the City must comply with the RA; and (5) the City violated the alteration requirements of 28 C.F.R. § 35.151, the maintenance of accessible feature requirements of 28 C.F.R. § 35.133, and the program access requirements of 28 C.F.R. § 35.150. [#41 at 18].[2]

For its part, the City also moves for summary judgment, arguing that: (1) sidewalks and curb cuts are not "services" or "programs" under the ADA or RA and, accordingly, Plaintiff's claims fail as a matter of law; (2) in the alternative, to the extent that the court finds that Mr. Hamer's claims are cognizable under the ADA and the RA, it is entitled to summary judgment as

---

[2] Plaintiff reserves the following issues for trial: (1) the full extent of the City's noncompliance with the ADA and accompanying injunctive and declaratory relief; (2) whether the City intentionally discriminated against Plaintiff to warrant damages; and (3) the full amount of Mr. Hamer's compensatory damages. [#41 at 18].

to its defense of undue burden; and (3) Plaintiff's claims are barred by the applicable statute of limitations. [#43].

On October 5, 2017, the undersigned held oral argument, and took the Motions under advisement. [#65]. The Motions are now ripe for resolution.

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. V. Cities Service Com*, 391 U.S. 253, 289 (1968)).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex,* 477 U.S. at 323). The movant can achieve this by pointing the court to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.* at 671. Once the movant meets this initial burden, the nonmovant assumes the burden to put forth sufficient evidence to demonstrate the essential elements of the claim such that a reasonable jury could find in its favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. Ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [her] case or a denial of an opponent's allegation," or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

## MATERIAL FACTS

The following facts are drawn from the instant Motions, and are undisputed for the purposes of this analysis.[3] Mr. Hamer, a resident of the City of Trinidad, Colorado, is confined to a motorized wheelchair and is a qualified individual with a disability under the ADA. *See* [#41-1 at 161:1–4,[4] 162:8–12, 163:23–25, 167:1–9]. Due to his confinement in a motorized

---

[3] Defendant has indicated that, to the extent that this matter proceeds beyond summary judgment, it may challenge whether Mr. Hamer is a qualified individual with a disability under the ADA and RA. [#43 at 2 n.3].

[4] When citing to a transcript, the court uses the document number assigned by the CM/ECF system but cites to the transcript's original page and line number, except when citing to Defendant's combined exhibits where the court also identifies the page number generated by the CM/ECF system.

wheelchair, Mr. Hamer does not drive or utilize public transportation; his "primary means of public transportation" are the City's public sidewalks. [#41-6 at ¶ 2]. The City has approximately "154 miles of sidewalk and approximately 1300 curb cuts." [#43-2 at 17, ¶ 5]. Mr. Hamer's claims focus solely on the City's noncompliant sidewalks and curb cuts. *See, e.g.*, [#1; #43-1 at 4, 63:12–15; #51 at 206:4–7].

In April 2014, Mr. Hamer attended a City Council meeting where he complained about ADA accessibility throughout the City, and noted seventy-nine (79) specific noncompliant curb cuts and sidewalks. [#43-1 at 9]. Over the next six months, Mr. Hamer levied multiple informal grievances at City Council meetings. *See* [*id.* at 10–14]. For instance, he noted that several public picnic tables and some commercial tables, located near the sidewalks, obstructed the thirty-six (36) inch path of travel requirement under the ADA, that the restrooms at City Hall were inaccessible to the disabled, that City residents do not stop at crosswalks for people in wheelchairs, and that several buildings were inaccessible to people in wheelchairs or scooters. *See* [*id.*]. To date, Defendant has completed several projects aimed at renovating the noncompliant sidewalks and curb cuts identified by Mr. Hamer, as well as other compliance projects. *See* [#49-1 at 150:9–23, #43-1 at 16, 82:10–19].

Plaintiff also filed an ADA complaint with the United States Department of Justice ("DOJ") on or about April 29, 2014. [#43-1 at 17–19]. The ADA complaint alleged that the City lacked the proper personnel to ensure ADA compliance within the City, that the sidewalks and curb cuts were noncompliant with ADA regulations, and that several City buildings were inaccessible to those in wheelchairs like Mr. Hamer. [*Id.*]. At some point following his ADA complaint with the DOJ, the DOJ began an ADA audit of the City. *See* [#41-2 at 21:4–7, 23:2–25, #41-3 at 59:5–60:14; #41-16]. Relevant here, the DOJ audit identified at least five (5) newly

constructed or altered curb ramps that were noncompliant. *See* [#41-16 at 4–5]. Upon inspection of approximately 178 curb ramps and 55 sidewalks in "high use" areas, Plaintiff's engineering expert Nicholas Heybeck ("Mr. Heybeck") opined that approximately 67 percent of the surveyed curb ramps were noncompliant with the 1991 and 2010 DOJ ADA Standards for Accessible Design ("ADAAG") and the 1997 Uniform Federal Accessibility Standards ("UFAS"), and that "large areas of sidewalks . . . were found to be non-compliant." [#41-8 at 13].

In anticipation of a consent decree (or other similar agreement) with the DOJ, Defendant sought to "amass funding" for the 2017 City budget of between $500,000 to $1 million to "address the most critical curb cuts immediately." [#43-2 at 8, 34:15–23]. The City must also set aside $600,000 to ameliorate other ADA compliance issues noted by the DOJ—this is in addition to the $550,000 spent by the City in 2016 to repair major downtown sidewalks and curb cuts as well as $800,000 planned for repairs in 2017. *See* [*id.* at 18, ¶¶ 7, 9]. According to the City's engineering expert Mike Kibbee ("Mr. Kibbee"), it would cost the City $913,618.74 to repair and/or renovate twenty-one (21) "intersections in the downtown area." [#43-2 at 17, ¶ 4; *id.* at 12–16; #41-14].

Plaintiff then initiated this action on October 12, 2016. [#1]. Plaintiff seeks declaratory judgment that Defendant's sidewalks and curb cuts violate the ADA and RA, injunctive relief requiring the City to alter and/or modify its sidewalks and curb cuts to comply with the ADA and RA, as well as compensatory damages and attorney's fees under the ADA. [*Id.* at 16–18].

**ANALYSIS**

I.      **Statutory Framework**

Title II of the ADA commands, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity[.]" 42 U.S.C. § 12132. A viable claim under the ADA requires Mr. Hamer to prove (1) he is a qualified individual with a disability; (2) he was excluded from participation in or the benefits of the City's services, programs, or activities; and (3) such exclusion was due to his disability. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). "The ADA requires more than physical access to public entities: it requires public entities to provide '*meaningful access*' to their programs and services." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007) (emphasis in original). Likewise, section 504 of the RA prohibits exclusion from the participation in, the denial of benefits to, or the discrimination of a "qualified individual with a disability . . . under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In addition to the three elements identified under the ADA, a viable RA claim requires Mr. Hamer to also prove that the "program or activity" receives federal funding. *See Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008).

Both the ADA and the RA allow private citizens to sue for damages for alleged statutory violations. *See Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012) (citing 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794(a))). "Because these provisions involve the same substantive standards, [courts] analyze them together." *Miller ex rel. S.M. v. Bd. of Educ. Of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citation omitted); *see Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) ("Because the language of disability used

in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge.").  With this framework in mind, the court now turns to the Parties' arguments—first considering standing before turning to the merits of other issues raised by the Parties.

## II.     Standing

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  In addition to any argument by the Parties, this court has an independent obligation to satisfy itself that it has subject matter jurisdiction.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir.2006).  Indeed, standing cannot be assumed.  *See Colorado Outfitters Ass'n*, 823 F.3d at 543–44.  Therefore, while standing is not formally a "claim" that is subject to summary disposition, this court addresses it first to determine whether it may exercise subject matter jurisdiction over this action.

To satisfy Article III's case or controversy requirement, Mr. Hamer must establish: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood of redressability by a favorable decision.  *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1214-15 (10th Cir. 2017) (citations and quotation marks omitted); *accord Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 551–52 (10th Cir. 2016) (emphasizing that "a disabled individual claiming discrimination under the ADA" must establish

Article III standing to invoke federal court jurisdiction (citations and internal quotation marks omitted)).

Yet in certain circumstances, a plaintiff must also satisfy the requirements of prudential standing—"judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc'y*, 632 F.3d at 1168 (internal citations and quotations omitted); *cf. Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (explaining that prudential standing is not jurisdictional and may be waived). To establish prudential standing, a plaintiff must (1) assert her own rights, rather than those belonging to third parties; (2) demonstrate that her claim is not simply a "generalized grievance;" and (3) show that her grievance falls within the zone of interests protected or regulated by statutes or constitutional guarantee invoked in the suit. *See Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citations omitted). "Thus, prudential standing often depends on whether the statutory provision upon which a claim is based 'properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *In re Thomas*, 469 B.R. 915, 921 (B.A.P. 10th Cir. 2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). While most cases consider standing at the time of the filing of the original pleading, "Article III demands that that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (quoting *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 726 (2013) (internal quotation marks omitted)).

### A. Qualified Individual

Mr. Hamer moves for summary judgment on the issue of whether he is a qualified individual under the ADA. [#41 at 12 & n. 40]. "[A]s a threshold matter, any plaintiff asserting a claim under the ADA must establish he or she is a 'qualified individual with a disability.'"

*Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004).  As discussed above, Defendant does not dispute, for the purposes of summary judgment, that Mr. Hamer is a qualified individual under the ADA.  [#43 at 2 n.3].  Nonetheless, Mr. Hamer seeks summary judgment in his favor on the issue of being a "qualified individual."  But "[i]t is well-settled that Rule 56 permits a party to seek summary judgment only as to an entire claim; a party may not seek summary judgment on a portion of a claim."  *Powers v. Emcom Assoc., Inc.*, No. 14-cv-03006-KMT, 2017 WL 4102752, at *1 (D. Colo. Sept. 14, 2017) (collecting cases).  While it would be dispositive had Defendant moved for summary judgment on the basis that Mr. Hamer is *not* a qualified individual, an affirmative finding in favor of Mr. Hamer that he *is* a qualified individual under the ADA as a matter of law is not dispositive as to any entire claim before the court.  Accordingly, the court DENIES Plaintiff's Motion as to the issue of qualified individual, and assumes for the purposes of the instant motions that Mr. Hamer is a qualified individual.

### B.      Injury-in-fact

"Injury in fact involves invasion of a legally protected interest that is concrete, particularized, and actual or imminent."  *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014).  That is, the injury must affect Mr. Hamer in a personal and individual way, and it must actually exist.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016).  Conjectural or hypothetical injuries or future injuries that are not certainly impending are insufficient.  *See Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016); *Colo.Outfitters Ass'n*, 823 F.3d at 544 ("[A] plaintiff must offer something more than the hypothetical possibility of injury. . . . [T]he alleged injury [cannot be] too speculative").

Moreover, the nature of the relief sought, i.e., retrospective or prospective, dictates what a plaintiff must prove to establish injury in fact.  For prospective relief, "the plaintiff must be

suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (reiterating that the "injury must be 'certainly impending' and not merely speculative." (citation omitted)). Conversely, retrospective relief requires that a plaintiff "suffered a past injury that is concrete and particularized." *Id.* at 1284.

Here, Plaintiff seeks both retrospective and prospective relief. [#1]. As to his retrospective relief, there is no dispute that Mr. Hamer has suffered a concrete and particularized injury in the past. The record indicates several instances where Plaintiff encountered inaccessible sidewalks and curb cuts throughout the City. *See, e.g.*, [#41-7 at 1–5; #41-14; #41-16 at 4–5; #43-1 at 9–14, 17–18; #43-2 at 2, 13–16; #51 at 189:4–13, 281:7–10]. Similarly, the court concludes that Mr. Hamer satisfies the injury in fact requirement for his prayer for prospective relief. As explained, it is undisputed that several sidewalks and curb cuts remain noncompliant. *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1177 (10th Cir. 2009) (recognizing standing for prospective relief requires continuing injury). Yet, Mr. Hamer must still establish that *he* faces a real and immediate threat of future injury due to the City's noncompliant sidewalks and curb cuts. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010). In the context of claims under Title II of the ADA, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that "averred intent" to utilize a public entities services "several times per year" or per month are not "[s]peculative, 'someday' intentions [that] do not support standing to seek prospective relief." *Tandy*, 380 F.3d at 1284 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)). Rather, this intent "suggests a concrete, *present* plan to use [the public entity's services] several times *each* year, including the year in which [the plaintiff] made that statement." *Id.* (emphasis in original); *see*

*also id.* at 1285 (distinguishing this case from the *Lujan*-plaintiffs' "mere intent to return to foreign countries at some indefinite future time." (internal quotation marks and citations omitted)). *See also Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (extending *Tandy* to Title III claimants).

Mr. Hamer attests that "the public sidewalks are [his] primary means of public transportation," as he does not own a motor vehicle and the City does not provide public transportation. [#41-6 at ¶ 2]. He further attests that the inaccessible sidewalks and curb cuts make it "difficult for [him] to safely utilize the sidewalks," and that he is "often forced to ride [his] mobility device in the street along with the vehicle traffic." [*Id.* at ¶¶ 3–4]; *see also* [#51 at 189:18–20]. At his deposition, Mr. Hamer testified that the inaccessibility of the City's sidewalks and curb cuts "impact[] what [he] is able to do and when," [#51 at 187:18–19], and that he encounters inaccessible sidewalks and curb cuts throughout the City on a daily basis, [*id.* at 188:1–5]. Plaintiff also indicated that there are no curb cuts at several intersections on his route to the grocery store, requiring him to travel an extended route in the street with vehicular traffic. *See* [#41-7 at 2, ¶ E.]; *see also* [#41-1 at 200:4–21]. The court is satisfied that Mr. Hamer has demonstrated an injury that is concrete and present, and not one "'that is contingent upon speculation or conjecture.'" *Lippoldt v. Cole*, 468 F.3d 1204, 1218 (10th Cir. 2006) (quoting *Tandy*, 380 F.3d at 1283–84); *cf. Kirola v. City & Cty. of San Franciso*, 860 F.3d 1164, 1174–75 (9th Cir. 2017) (holding the plaintiff demonstrated an injury in fact for prospective relief under Title II by testifying that she encountered several sidewalks and curb cuts that were noncompliant with the ADA and was deterred from future attempts to access these services for this reason). Based on the foregoing, Mr. Hamer has also established an injury in fact for purposes of his prospective relief.

**C.      Causation and Redressability**

Finally, there is no dispute that the City's inaccessible sidewalks and curb cuts are the cause of Plaintiff's injury, and that a favorable decision will redress Mr. Hamer's injury, i.e., force the City to remediate its noncompliant sidewalks and curb cuts.  *See Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1165–66 (E.D. Cal. 2014) (concluding the plaintiff's injury was traceable to the defendant's "failure to 'provide accessible pedestrian pathway,'" an injury redressable by a favorable ruling).  Thus, Mr. Hamer has standing to proceed with his claims under the ADA and the RA.  *See Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002).

**D.      Standing Versus Right to Relief**

In so ruling, the court recognizes that each Party moves for summary judgment on whether sidewalks and curb cuts constitute a "service, program, or activity" under the ADA or a "program or activity" under the RA.  *Compare* [#41 at 21–22] *with* [#43 at 6–15].  Like the issue of qualified individual, this issue is dispositive if Defendant prevails on its argument that Mr. Hamer lacks standing because sidewalks and curb cuts are not services, programs, or activities that give rise to a cognizable private right of action under Title II of the ADA or section 504 of the RA [#43 at 13, 14].  This issue is not dispositive, however, if Plaintiff prevails on his contrary argument that sidewalks are services, programs, or activities under Title II of the ADA and section 504 of the RA.

While some courts and litigants have intertwined the two concepts, this court finds that it is more appropriate to consider them as distinct—one pertaining to the court's jurisdiction and one pertaining to a plaintiff's right to relief.  Indeed, standing is rooted in the principle that federal courts have jurisdiction to hear only "cases" and "controversies" such that the plaintiff

must be "the proper party to bring this suit[.]" *Raines v. Byrd*, 521 U.S. 811, 818 (1997). And although this inquiry "often turns on the nature and source of the claim asserted," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), it "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotation marks and citation omitted). To that end, "an interest can support standing even if it is not protected by law (at least, not protected in the particular case at issue) so long as it is the sort of interest that courts think to be of sufficient moment to justify judicial intervention." *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006) (noting, "that lack of protection goes to the merits, not standing.").

As it applies here, Mr. Hamer may have standing to sue for the alleged discrimination (which the court agrees he does), yet he may not be entitled to the relief sought under Title II of the ADA or section 504 of the RA. The City submits that the court could find in its favor on the services, programs, or activities issue by concluding that Plaintiff lacks standing *or* that Plaintiff's claims fail on the merits, *see* [#43; #49 at 7 n.2, 10–11], "[s]ince Mr. Hamer has not alleged a cognizable violation of 42 U.S.C. § 12132, he has no injury to a legally protected interest." [#43 at 14].

After consideration of the issue, the court concludes that the question of whether sidewalks and curb cuts constitute a public entity's services, programs, or activities is more appropriately considered as an issue related to Mr. Hamer's right to relief, not his standing under the ADA or the RA. And because this court need not resolve this issue to adjudicate the instant motions for summary judgment, it declines to do so in light of the lack of clearly dispositive Circuit precedent.[5] Instead, the court focuses on the narrower issue of the timeliness of Mr.

---

[5] This court notes, however, that the weight of authority favors a finding that sidewalks do constitute services under Title II of the ADA and section 504 of the RA. *See, e.g., Babcock v.*

Hamer's claims because such issue is dispositive.[6] *See Dames & Moore v. Regan*, 453 U.S. 654, 660 (acknowledging the "necessity to rest [the Court's] decision on the narrowest possible grounds of deciding the case."); *accord Rodriguez v. City of Chicago*, 156 F.3d 771, 778 (7th Cir. 1998) (Posner, J., concurring) ("If the judges are dubious about the broad ground, then they will do well to decide only on the narrow ground"). Accordingly, for purposes of its statute of limitations analysis only, the court assumes without deciding that Plaintiff has stated a cognizable cause of action under Title II of the ADA and section 504 of the RA, and turns to the application of the statute of limitations.

### III. Statute of Limitations

Neither Title II nor the RA provides a statute of limitations. "Where Congress creates a cause of action without specifying the time period within which it may be brought, courts may

---

*Michigan*, 812 F.3d 531, 543 (6th Cir. 2016) (Rogers, J., concurring) (recognizing that sidewalks may constitute a "service" because they are "critical to the everyday transportation needs of the general public") (discussing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907, 912 (6th Cir. 2004) (holding that 28 C.F.R.§ 35.151 was enforceable through a private right of action requiring the City to install newly constructed sidewalks that were accessible to the disabled)); *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) ("A city sidewalk is therefore a 'service, program, or activity' of a public entity within the meaning of Title II.") (citing *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)); *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) ("For the reasons stated, we hold that the plaintiffs have a private right of action to enforce Title II of the ADA and § 504 of the Rehabilitation Act with respect to newly built and altered sidewalks."); *Mason v. City of Huntsville, Ala.*, No. CV-10-S-02794-NE, 2012 WL 4815518, at *8 (N.D. Ala. Oct. 10, 2012) (holding that Title II prohibited discrimination against disabled persons in the provision of public sidewalks, curb ramps, and parking areas); *cf. Young v. City of Claremore, Okla.*, 411 F. Supp. 2d 1295, 1304 (N.D. Okla. 2005) ("[T]he Court finds that use of the streets, roadways, and highways located in the City of Claremore for purposes of transportation constitutes a public service, program, or activity under the ADA."); *Scharff v. Cty. of Nassau*, No. 10 CV 4208 DRH AKT, 2014 WL 2454639, at *7 (E.D.N.Y. June 2, 2014) (holding that "installing and maintaining pedestrian crossing signals at crosswalks . . . falls within the scope of Title II and the Rehabilitation Act."). *But c.f. Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016) (distinguishing *Frame* and holding that defects in facilities were not services, and, accordingly, the plaintiff did not have a private right of action under Title II of the ADA).

[6] For this reason, the court does not consider the Parties' merits-based arguments or the City's undue burden defense.

infer that Congress intended the most analogous state statute of limitations to apply." *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1197 (10th Cir. 2003). Accordingly, Colorado's two-year statute of limitations applies to Mr. Hamer's ADA and RA claims. *See Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d 1192, 1213 (D. Colo. 2010) (citing *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009)) (further citation omitted); *accord Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631–32 (10th Cir. 1993) (analogizing RA claims to § 1983 claims, and holding that the Kansas two-year statute of limitations for personal injury claims controlled).

When a defendant moves for summary judgment based on an affirmative defense, it is the defendant's burden to demonstrate the absence of a factual dispute as to the defense asserted; the plaintiff must then "demonstrate with specificity the existence of a disputed fact," as a failure results in the affirmative defense barring the plaintiff's claims. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). Here, the City avers, "Mr. Hamer was clearly aware of alleged ADA/RA violations throughout the City in April of 2014, but failed to bring suit until October of 2016;" thus, the applicable two-year statute of limitations bars his claims. *See* [#43 at 17]. At the latest, according to the City, Mr. Hamer "had knowledge of the exact basis for this lawsuit on April 29, 2014," the date he filed his complaint with the DOJ. *See* [*id.* at 19; #43-1 at 17–19].

Plaintiff responds that the two-year statute of limitations does not preclude his claims for two reasons. First, the continuing violation theory applies to his claims under 28 C.F.R. §§ 35.150 (governing the accessibility of existing facilities) and 35.133 (governing the maintenance of readily accessible facilities). [#54 at 15]. Second, the City "committed numerous ADA violations in the two years before Mr. Hamer filed suit." [*Id.*]. The court

addresses each argument in turn, and rejects the continuing violation theory as applied to Plaintiff's claims and finds that Plaintiff's claims are untimely.

### A.    Continuing Violation Theory

The continuing violation theory "is a creation of federal law that arose in Title VII cases[,]" *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997), and "permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination[,]" *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Typically, this doctrine applies to hostile work environmental claims. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002) (Title VII); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185–86 (10th Cir. 2003) (Title I). In this context, such claims are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice[,]'" meaning the discriminatory conduct "cannot be said to occur on any particular day." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (quoting *Morgan*, 536 U.S. at 115, 117). That said, discrete discriminatory acts each start their own statute of limitations clock for purposes of filing a timely suit. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (citations omitted).

Plaintiff argues that his claims under 28 C.F.R. §§ 35.150 and 35.133 are subject to the continuing violation theory, because each claim requires an examination of the circumstances as a whole, not discrete acts. *See* [#54 at 17–18]. The City counters that the continuing violation theory is inapplicable, because any accessibility barriers are "permanent," i.e., discrete acts, and, nonetheless, even if the continuing violation doctrine applied to his 28 C.F.R. § 35.150 claim, he knew of the alleged discrimination no later than April 29, 2014. [#61 at 9–10]. For the reasons

stated below, the court agrees that the continuing violation theory is inapplicable to Plaintiff's claims.

As explained, the continuing violation theory typically applies to hostile work environment claims. *E.g.*, *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1138–40 (10th Cir. 2003). Indeed, the Tenth Circuit has rejected its application to discrimination claims pursuant to 42 U.S.C. § 1981. *See Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1193 n.2 (10th Cir. 2002). Nor has it ever "formally adopted [] the doctrine for § 1983 actions," *Gosselin v. Kaufman*, 656 F. App'x 916, 919 (10th Cir. 2016) (unpublished); *Canfield v. Douglas Cty.*, 619 F. App'x 774, 778 (10th Cir. 2015) (unpublished) ("[T]his court has never held that the continuing-violation doctrine applies to § 1983 cases."), or *Bivens* claims, *see Silverstein v. Fed. Bureau of Prisons*, No. 07-CV-02471-PAB-KMT, 2011 WL 4552540, at *9 (D. Colo. Sept. 30, 2011). And to this court's knowledge, the Tenth Circuit has yet to adopt it in the context of Title II.

Nonetheless, at least two Circuit Courts of Appeal have endorsed the continuing violation theory in the context of Title III claims. In *Pickern v. Holiday Quality Foods, Inc.*, the Ninth Circuit held, "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury of the ADA continues." 293 F.3d 1133, 1137 (9th Cir. 2002). In so holding, the Ninth Circuit concluded that Mr. Pickern's Title III claims against a grocery store, seeking prospective injunctive relief, were timely though his only entry of the store occurred outside California's one-year statute of limitations applicable to Title III claims. *Id.* The Seventh Circuit adopted this reasoning in *Scherr v. Marriott International, Incorporated*, wherein the Seventh Circuit held that Ms. Scherr's Title III claims were timely, because she was allegedly aware of continued ADA violations at the defendant's hotel even though she filed her suit nearly four-years after she visited the noncompliant hotel. 703 F.3d

1069, 1075–76 (7th Cir. 2013) ("Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim.").  Several district courts have also applied the continuing violation theory to Title II claims on the theory that denial of meaningful access to services, programs, or activities continues so long as the barrier(s) still exist.  *See, e.g.*, *Mosier v. Kentucky*, 675 F. Supp. 2d 693, 698 (E.D. Ky. 2009) ("Governments continue to discriminate against persons with disabilities by providing court proceedings without interpreters or auxiliary aids.  Therefore, so long as Plaintiff is denied meaningful access to Defendants' programs, the violation of the ADA continues.  Plaintiff asserts that barriers still exist; thus, Plaintiff asserts a claim that falls within the statute of limitations."); *Eames v. S. Univ. & Agric. & Mech. Coll.*, No. 09-56-JJB, 2009 WL 3379070, at *3 (M.D. La. Oct. 16, 2009) (applying *Pickern* to the plaintiff's Title II claims, because the plaintiff asserted that the barriers to the defendant's programs still existed despite his lack of attempts to access those programs); *hip (Heightened Indep. & Progress), Inc. v. Port Auth. of New York & New Jersey*, No. CIV.A. 07-2982(JAG), 2008 WL 852445, at *3 (D.N.J. Mar. 28, 2008) ("Defendant's construction of a public transportation entrance that is inaccessible to disabled persons, and its failure to remedy the improper construction, constitutes a continuing violation.").

Plaintiff asks this court to align itself with those that have applied the continuing violation theory to similar Title II claims, arguing that because "the injurious conditions persist to this day[,]" Mr. Hamer's program accessibility (28 C.F.R. § 35.150) and maintenance of accessible features (28 C.F.R. § 35.133) claims are timely.  *See* [#54 at 17–18].  Respectfully, the court declines to do so, based on the circumstances presented in this case.

As mentioned, "plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations

period, even if sufficiently related to those acts occurring within the limitations period." *Davidson*, 337 F.3d at 1185. Further, the continuing violation theory "is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (citations and internal quotation marks omitted). Such is the case here—the construction and alleged lack of maintenance of noncompliant sidewalks and curb cuts constitute discrete acts of discrimination, any subsequent injury caused by the City's failure to remediate these issues are continual ill effects of that original violation. *Id.* The court finds several cases persuasive on this point.

First, in *Rhodes v. Langston University*, the Tenth Circuit considered, among other issues, the timeliness of plaintiff's ADA and RA claims. 462 F. App'x 773, 779–80 (10th Cir. 2011) (unpublished). The plaintiff complained of specific classroom accessibility and overheating problems in the fall of 2006, and again in the spring of 2007—barriers that resulted in the overuse of his prosthetic leg, which required separate surgeries in 2006 and 2008. *Id.* at 780. Mr. Rhodes filed suit on August 12, 2009, and the district court held that any claims accruing prior to August 12, 2007, were time barred. *Id.* Neither party disputed the applicability of Oklahoma's two-year statute of limitations; the plaintiff, however, argued that his claims did not accrue until he left the defendant's nursing program in 2008 and, thus, the defendant's discriminatory acts were "on-going" for purposes of the statute of limitations. *Id.* The Tenth Circuit rejected Mr. Rhodes's argument, and held that his "complaints represent discrete accessibility issues rather than a continuation by [the defendant] or related and repetitive unlawful acts or practices." *Id.*

Relatedly, in *A Society Without A Name ("ASWAN") v. Virginia*, the Fourth Circuit considered the applicability of the continuing violation theory to ASWAN's Title II claim

against the defendants. 655 F.3d 342, 348–49 (4th Cir. 2011). ASWAN alleged that the defendants' decision to open a homeless shelter miles away from downtown Richmond constituted discrimination under Title II, because the general public regarded homeless people as being disabled and the defendants were trying to exclude the homeless from the defendants' services, programs, and activities. *Id.* at 345. The defendants opened the homeless shelter on February 5, 2007, and ASWAN filed suit on February 17, 2009. *Id.* at 344–45. The Fourth Circuit first concluded that Virginia's one-year statute of limitations applied to ASWAN's ADA claim and, second, that ASWAN's ADA claim was untimely. *Id.* at 348. ASWAN, however, argued that the defendants' conduct, i.e., the continued operation of the homeless shelter and the addition of new services offered, constituted a continuing violation of the ADA. *Id.* The Fourth Circuit disagreed. Rather, the court held, "[t]he fact that the [homeless shelter] is still located on Oliver Hill Way and continues to offer services to the homeless . . . does not amount to a continuing violation, but rather amounts to the continuing effect of the original decision to locate the [homeless shelter] on Oliver Hill Way." *Id.* at 349 (citation omitted). Thus, the Fourth Circuit held that ASWAN's ADA claim was time barred.

The Third Circuit reached a similar conclusion in *Foster v. Morris*, wherein Mr. Foster, a partial paraplegic confined to a wheelchair, brought suit under Title II, challenging the lack of handicap accessible facilities at the Franklin County Prison ("Franklin"). 208 F. App'x 174, 176 (3rd Cir. 2006) (unpublished). Though incarcerated elsewhere, Mr. Foster was transferred to Franklin for various lengths of time prior to court proceedings. *Id.* It was undisputed that Franklin's cells could not fit Mr. Foster's wheelchair through their entrances, that the toilets were not the proper height and lacked grab bars, and that Franklin lacked handicap accessible showers. *Id.* Though Mr. Foster had been repeatedly transferred to Franklin, whose facilities remained

inaccessible, the Third Circuit held that Mr. Foster could only recover for injuries that occurred within the applicable two-year statute of limitations under Pennsylvania law. *Id.* at 177. This was because Franklin's accessibility barriers "had a degree of permanence such that they put [Mr.] Foster on notice of his duty to assert his rights each time he was transferred to Franklin. Thus, the continuing violations doctrine is inapplicable in this case." *Id.* at 178.

Finally, in a case nearly identical to this action, the Western District of Pennsylvania rejected the application of the continuing violation theory to the plaintiffs' ADA and RA claims that challenged the accessibility of sidewalks and curb cuts in Pennsylvania cities. *See Voices for Independence ("VFI") v. Pennsylvania Dep't of Transp.*, No. CIV.A. 06-78 ERIE, 2007 WL 2905887, at *4–12 (W.D. Pa. Sept. 28, 2007). The court explained, "a noncompliant curb ramp is the type of condition which partakes of permanence and should trigger an awareness on the part of a qualified plaintiff who is denied access that he should assert his rights." *Id.* at *11. Further, the consequences of a public entity's installation of noncompliant sidewalks and curb cuts continues despite any continued intent to discriminate. That is, "[o]nce a defective curb cut is installed, the consequences for disabled persons encountering that site continue whether or not another defective curb cut is installed elsewhere." *Id.* Nor did the court accept the plaintiffs' arguments that noncompliant sidewalks and curb cuts constituted an "overarching" policy of discrimination such that the continuing violations theory applied. *Id.* at *12.

Thus, this court concludes that the continuing violation theory is inapplicable to Mr. Hamer's ADA and RA claims. The City's failure to (1) remediate noncompliant sidewalks and curb cuts, (2) build new and/or alter its sidewalks and curb cuts in compliance with the ADA, or (3) maintain accessible sidewalks and curb cuts all constitute *discrete* acts of discrimination. Each time Mr. Hamer encountered a noncompliant sidewalk or curb cut he knew of the City's

discrimination, and any subsequent injury sustained by the City's lack of remediation is merely the continued ill effect of the original discriminatory act. *See Mata*, 635 F.3d at 1253; *accord VFI*, 2007 WL 2905887, at *11. Each act, therefore, triggers a new statute of limitations even if related to issues throughout the City. *Davidson*, 337 F.3d at 1184.

A similar conclusion is warranted as to Mr. Hamer's maintenance of accessible facilities claim (28 C.F.R. § 35.133). Though Mr. Hamer makes much of the notion that "there is no 'discrete act' which would clearly trigger the statute of limitations" for this claim, he clarified at oral argument that this claim encompassed the City's failure to implement any maintenance plan and/or protocol at all. *E.g.*, [#66 at 25:16–23, 26:11–20, 32:13–25]. Indeed, this court acknowledged that not every chip or crack equates to an ADA or RA violation that requires immediate remediation, *see* [*id.* at 26:6–20]; thus, any lack of a maintenance plan and/or protocol constitutes a discrete act. Again, any lingering injury from this act does not amount to continued unlawful acts but, rather, the ill effects of the original wrong. *See ASWAN*, 655 F.3d at 349.

Nor is the court convinced that the City's entire system of noncompliant sidewalks and curb cuts somehow constitutes an overarching policy of discrimination, or one that requires this court to examine the system as a whole such that the continuing violation theory applies. At oral argument, Mr. Hamer appeared to accept this conclusion, and argued that, absent the continuing violation theory, he can still recover for injuries sustained after October 12, 2014, two years before filing this suit. *See, e.g.*, [#66 at 31:11–22]. Accordingly, the court now considers when Mr. Hamer's ADA and RA claims accrued for purposes of the applicable two-year statute of limitations.

### B.    Accrual of Plaintiff's ADA and RA Claims

While state law governs the applicable limitations period, federal law governs when Mr. Hamer's claims accrued.  *See Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). "[T]he federal common law rule on when a statute of limitations begins to run is that it is when the plaintiff *discovers*, or by exercise of *due diligence* would have discovered, that he has been injured and who caused the injury."  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001) (emphasis in original) (citations and internal quotation marks omitted). Accordingly, Mr. Hamer's ADA and RA claims accrued when he discovered, i.e., encountered, the specific noncompliant City sidewalks and curb cuts.  *See Frame*, 657 F.3d at 238 (holding, "the plaintiffs' cause of action accrued when they knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks."); *VFI*, 2007 WL 2905887, at *16 ("In the context of this case, this means that, as to any given Plaintiff, his or her cause of action under Title II accrued when the Plaintiff discovered or should have discovered that a particular curb face denied him or her proper access in violation of the ADA.").

For purposes of this analysis, then, the relevant inquiry becomes whether Mr. Hamer encountered/discovered the City's alleged discrimination within the two-years preceding this suit, i.e., October 12, 2014.  It is therefore immaterial *when* the City newly constructed or altered its sidewalks and curb cuts.  *See Frame*, 657 F.3d at 239 (rejecting the contention that the claim accrues when the city builds or alters its sidewalks); *VFI*, 2007 WL 2905887, at *14–15 (same). Rather, the court must be satisfied that Mr. Hamer actually suffered discrimination within two years of filing suit and, as discussed above, it is insufficient to rely solely on the continued inaccessibility of the City's sidewalks and curb cuts to make this requisite showing.

Defendant argues that Plaintiff's claims are untimely because, at the latest, Mr. Hamer was aware of the City's alleged discrimination on April 29, 2014, the date Mr. Hamer filed a complaint with the DOJ. *See* [#43 at 18–19; #61 at 10]. Further, absent the continuing violation theory, Mr. Hamer fails to identify any violations within the applicable two-year statute of limitations. [#61 at 10]. The court respectfully agrees.

Mr. Hamer moved to the City in or about March 2014. [#43-1 at 2, 11:11–18; #51 at 150:5–8]. On April 1, 2014, Plaintiff attended a City Council meeting, and testified that he "counted 79 ADA violations with just the sidewalks and curb cuts." [#43-1 at 9]. Mr. Hamer gave an example of a four-way intersection where only one of the four curbs contained a ramp accessible to persons in wheelchairs, and that a curb cut in front of the home he wanted to buy lacked any sidewalk. [*Id.*]. He continued by noting issues with the entrance to the City Hall Annex building, and expressed dismay at the City's lack of an ADA compliance coordinator. [*Id.*]. Then, on April 29, 2014, Mr. Hamer emailed an ADA complaint to the DOJ. *See* [*id.* at 17–19]. Mr. Hamer levied four general grievances against the City: (1) the lack of an ADA coordinator; (2) the lack of an official tasked with investigating ADA complaints; (3) the lack of an ADA grievance procedure; and (4) the lack of any "self-evaluation of its services, activities, programs, and facilities for ADA compliance or [] any kind of ADA transition plan." [*Id.* at 17]. Plaintiff's DOJ complaint continued that "[t]here are no sidewalks in many parts of the City;" that there were only a few curb cuts in the downtown area; that there were several intersections with no curb ramps; that sidewalk obstructions and barriers "make passage in a wheelchair impossible," and forces him into the street; that several City buildings were inaccessible; and that "[e]very service, every program, and every activity for every department of the City [] fails to comply with the ADA." [*Id.* at 17–18]. Mr. Hamer raised similar complaints with the City

Council at meetings in May, June, and August of 2014. *See* [*id.* at 9–14; #51 at 130:12–22, 143:24–144:5].

Based on the undisputed facts, Mr. Hamer's ADA and RA claims accrued on April 29, 2014, or, at the very latest, in August 2014, when he again raised his concerns about the City's ADA compliance at the City Council meeting. At this point, Mr. Hamer was aware of the nature and extent of the City's discrimination. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("[T]he limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief." (citation and internal quotation marks omitted)). *See also* [#51 at 207:7–10 (Q: "So as of April 29th, 2014, you believed you had sufficient knowledge [of the City's noncompliant sidewalks and curb cuts] to request assistance from the [DOJ], correct?" A: "I did.")]. Mr. Hamer forwards no argument that he was unaware of any particular violation that he now alleges he encountered after August 2014.

According to Plaintiff, this fact is not fatal to his claims because the City's sidewalks and curb cuts remain noncompliant; thus, he can recover for injuries occurring after October 12, 2014. At oral argument, the court pushed Mr. Hamer on this point: if the continuing violation theory does not apply to his alleged injuries, where does the court draw the line for purposes of the statute of limitations? *See* [#66 at 11:15–21, 14:16–19]. In response, as in his briefs, Plaintiff averred that the statute of limitations would bar only damages sustained prior to October 12, 2014, but, because the City's sidewalks and curb cuts remained inaccessible, he could still sue for injuries suffered since October 12, 2014. *See* [*id.* at 13:4–11 ("it is an ongoing violation—not even just a continuing violation theory, but the fact that it's never been corrected."), 13:19–14:15, 14:20–15:4]. As discussed above, this court finds that the continued inaccessibility of the City's sidewalks and curb cuts satisfies the injury requirement for

prospective relief; however, Plaintiff fails to address the requirement that a specific injury occurred within the applicable two-year statute of limitations. Plaintiff points the court to no such injury such that the court can determine which of Mr. Hamer's claims are timely. Because the court has concluded that the continuing violation theory does not apply to Mr. Hamer's ADA and RA claims, Mr. Hamer must establish *discrete acts* of discrimination he encountered since October 12, 2014, for statute of limitations purposes. *See Daniels*, 701 F.3d at 628. It is insufficient to rely solely on the continued ill effects of the City's original acts of discrimination to satisfy his burden on summary judgment.

Plaintiff also cannot rely on his expert report to satisfy his burden. Though the report identifies several sidewalks and curb cuts that are noncompliant, it does not appear that Plaintiff was present for Mr. Heybeck's survey of the City. *See* [#49 at 17]. Rather, the report simply confirms the existence of a live case and controversy, but does not support Plaintiff's assertions that his claims are timely simply because the City's sidewalks and curb cuts remain noncompliant. Relatedly, although the DOJ reported that the City altered the curb ramps on the east and wide side of Commercial Street south of Purgatoire River Bridge in 2015, *see* [#41-16 at 4–5; #41-3 at 59:19–25, 60:10–21], the date of the construction or alteration does not control when Plaintiff's claims accrue as to these discrete acts of discrimination. *See Frame*, 657 F.3d at 239 (rejecting the contention that the claim accrues when the city builds or alters its sidewalks); *VFI*, 2007 WL 2905887, at *14–15 (same). And other than noting that these curb ramps were altered in 2015, Plaintiff again fails to direct the court to any evidence that he actually encountered *these* instances of discrimination. *See* [#66 at 13:5–6 ("I haven't gone intersection by intersection and asked [Mr. Hamer] . . . which he learned about . . . . And there are the emails . . . by Mr. Hamer saying that everything is in violation")]. The undisputed evidence suggests

that the City has resolved any lingering issues with these curb ramps; thus, any alleged discrimination as to these curbs is now moot.[7]  *See* [#49-3 at ¶ 3].

Ultimately, the undisputed evidence reveals that Mr. Hamer's ADA and RA claims are untimely.   As explained, in April, May, June, and August of 2014, Mr. Hamer repeatedly expressed his concerns with the inaccessibility of the City's sidewalks and curb cuts, including the City's lack of any official responsible for ensuring the City's compliance with the ADA.  *See generally* [#43-1].   While it is true that many of the issues Plaintiff identified remain uncorrected, this alone does not satisfy his burden that he "demonstrate with specificity the existence of a disputed fact" as to the City's statute of limitations defense.  *Hutchinson*, 105 F.3d at 564.  Plaintiff fails to direct the court to any evidence demonstrating any injury sustained since October 12, 2014, and fails to carry his burden to rebut Defendant's statute of limitations summary judgment argument.   Accordingly, this court concludes that summary judgment in favor of Defendant is appropriate as to Plaintiff's ADA and RA claims on statute of limitations grounds.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     Plaintiff's Motion for Partial Summary Judgment [#42] is **DENIED**;

(2)     Defendant's Motion for Summary Judgment [#43] is **GRANTED**;

(3)     Summary Judgment be entered in favor of Defendant and against Plaintiff, and that Plaintiff's Complaint [#1] be **DISMISSED with prejudice**; and

---

[7] In fact, it appears these are the only sidewalks and/or curb cuts Plaintiff can identify as being subject to the new construction/alteration standard.  *See* [#41 at 24; #54 at 18].

(4)	The Clerk of the Court **ENTER** Final Judgment in favor of Defendant and against Plaintiff and **TERMINATE** this case accordingly, with each party bearing its own costs and fees.[8]

DATED:  December 1, 2017                                        BY THE COURT:

                                                               s/ Nina Y. Wang
                                                               Nina Y. Wang
                                                               United States Magistrate Judge

---

[8] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Because the questions presented in this matter were unique, this court declines to award fees to Defendant. *See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 459 (10th Cir. 1995) (noting that there is no abuse of discretion when the district court denies fees where the "issues are close and difficult," or where the prevailing party is only partially successful).